## Isaac T. Eaton *vs.* New England Telegraph Company.

### York. Decided February 3, 1878.

#### *Evidence. Exceptions.*

An entire disclosure made by a party to a suit, as trustee in another suit, may be read in evidence against him, to show that he omitted to claim therein to be the owner of the property he sues to recover for, if the omission was inconsistent with such claim, although the disclosure contains matters foreign to the point at issue.

Upon the question, whether A was the owner of certain certificates of stock in his possession or whether he was merely the custodian of them for B, the certificates having been issued to A, and bearing upon their backs assignments by A to B, it is competent for B to show that A at the same time held in his possession as custodian for B other certificates of shares in the same company, issued directly to B and belonging to B.

An assignee of certificates of shares of stock, who leaves the certificates, with the assignments unrecorded, in the possession of the assignor, is not thereby guilty of negligence so as to be estopped to set up his title against a person who claims title to the certificates through an alteration of the assignments by the fraud and forgery of the assignor.

Exception does not lie to an instruction in the charge of a judge, which was pertinent and proper upon the question he was presenting to the jury, but which would have needed some qualification as applicable to another point involved in the facts of the case, unless the attention of the judge is called to such point by counsel at some stage of the trial before the cause is committed to the jury.

On exceptions and motion to set aside the verdict which was for the defendants.

Case in tort, alleging, in substance, that one Isaac W. Eaton, October 23, 1873, being the owner of thirty shares of the capital stock of the defendant company, and holding certificates thereof of the value of $100 each, then, for a valuable consideration, sold and assigned the said shares by his indorsement and delivery of the certificates to the plaintiff; that the plaintiff then exhibited the transfers and certificates to the treasurer of the company and offered to surrender them to him, and demanded that the transfers be entered upon the books of the company and a new certificate of the thirty shares be issued by the company to the plaintiff, all of which the said company refuse to do, to the damage, etc. The plea was the general issue.

The evidence showed that Isaac W. Eaton, the father of the plaintiff, was formerly secretary of the defendant company; that December 7, 1867, a certificate of fourteen shares of the capital stock of $50 each was issued to him, signed by himself as secretary and by the secretary and treasurer, and that July 13, 1872, a certificate of sixteen shares similarly signed was issued to him; that both certificates were transferred by indorsment signed by Isaac W. Eaton, and that the name of Richard Palmer was first inserted as transferee. Palmer's name was afterwards erased and the name of the plaintiff inserted at the apparent date of October 13, 1873. Richard Palmer died November 14, 1873. Isaac W. Eaton ceased to act as secretary about June, 1874.

The plaintiff claimed that the insertion of Palmer's name was for the purpose of executing a contemplated arrangement between Isaac W. Eaton and Palmer which never came to execution, and that the certificates were never delivered to him. The defendants contended that they had been delivered to Palmer and left by him in Eaton's custody, to enable Eaton to act as a director; that the erasure of Palmer's name and the insertion of the plaintiff's were fraudulent and void.

The defendants, against the plaintiff's objection, put in evidence plaintiff's disclosure in the action *Samuel W. Hamilton et al.* v. *Isaac W. Eaton & Isaac T. Eaton*, trustee, signed and sworn to by the plaintiff October 5, 1875, in which, after disclosing certain conveyances by his father to him, not including the shares in question, he gave an affirmative answer to the question: " Was this all the personal property you have had of your father in any way since 1871 ?"

After the verdict, the plaintiff filed exceptions to the admission of the trustee disclosure; also because the court allowed the witness, Stephen B. Palmer, against objection, to answer the question : " Whether you saw in the hands of Isaac W. Eaton, at the same time, other certificates issued to Richard Palmer ;" also to the instruction to the jury, " that if there had been a perfected contract of transfer to Richard Palmer by a delivery to him of the certificates, and they were left with Eaton as the custodian of Palmer, he would have no right to change the transfer, and such

an alteration as appears to have been made in the transfer would be entirely unauthorized, and would convey the plaintiff no title ; it would be void in law and the plaintiff would stand without title and without right to transfer."

*H. Fairfield,* for the plaintiff, argued in favor of the motion.

*R. P. Tapley,* on the same side, in favor of the exceptions, cited R. S., c. 46, § 11, which provides that " when the capital of a corporation is divided into shares, and certificates thereof are issued, they may be transferred by indorsement and delivery, but such transfer of shares is not valid except between the parties thereto until the same is so entered on the books of the corporation as to exhibit the names and residences of the parties, the number of the shares and the date of their transfer."

He contended that even if a perfected contract of transfer had been made to Palmer by this indorsement and delivery and the certificates returned to him as custodian, it was not valid except between the parties thereto until the entry required by law was made upon the defendants' books, and never having been so entered the plaintiff was unaffected by it. *Oxford Turnpike* v. *Bunnel,* 6 Conn. 552. *Fisher* v. *Essex Bank,* 5 Gray, 373. *Marlborough Manufacturing Co.* v. *Smith,* 2 Conn. 579. *Northrop* v. *The Newton & Bridgeport Turnpike Co.,* 3 Conn. 544. *Boyd* v. *Rockport Steam Cotton Mills,* 7 Gray, 406.

*I. T. Drew & H. K. Bradbury,* for the defendants.

PETERS, J. The defendants are sued for preventing the plaintiff from becoming the recorded owner of certain shares in their company. The plaintiff presented to the defendants certain certificates of shares, originally issued to Isaac W. Eaton and by him assigned to the plaintiff, for the purpose of procuring a transfer to himself upon the books of the company. The proffer was rejected by the company for the alleged reason that the same shares had been previously assigned by the same Isaac W. Eaton to one Palmer, the true owner thereof, although such assignment was not recorded, and that after Palmer's death, by an alteration and forgery by Isaac W. Eaton, the assignment had been changed

by inserting the name of the plaintiff instead of Palmer's name as assignee. The case comes up upon motion and exceptions, the defendants getting the verdict.

The motion is much relied on by the losing party. The facts were few. It seems that at a time while the certificates were in Isaac W. Eaton's hands they bore on their backs assignments to Palmer. With the jury the case must have hinged on the point, whether Isaac W. Eaton had ever sold the shares to Palmer or not. The plaintiff claimed that the so-called assignment was a writing merely preparatory to an intended sale, perhaps, but never used for the purpose, and therefore properly erased; and the defendants insisted that there had been a sale to Palmer perfected by delivery, and that the certificates remained with the assignor as the custodian of the assignee. The fact that the shares were once assigned upon their backs to Palmer was well established. Then, it was shown that the assignor had in his possession and keeping, at the same time he held the shares purporting to be assigned, certain other certificates of shares of the same stock standing in Palmer's name and confessedly belonging to Palmer. The plaintiff pretended that he actually purchased the shares from Isaac W. Eaton for value received. At the time of the trial Palmer was deceased. Isaac W. Eaton was present but not called. Although charged by the defense with fraud and forgery, and knowing more about the matter in contention than all the men in the world, the plaintiff (his son) kept him off the stand. Added to this, the defendants put in evidence a trustee disclosure of the plaintiff, wherein he made a full exposition of all his dealings in detail with his father for the time covered by the period of the stock transactions, but made no mention of this purchase, swearing in his disclosure that he had had no other transactions with his father more than was mentioned therein. After this evidence was admitted, the plaintiff gave not a word of explanation in relation to the disclosure or the statements which it contained. Undoubtedly, the jury found that no actual and real sale of the shares was ever made by the father to the son. And, as a most natural and reasonable deduction from that finding and the other facts, they believed there had been an actual and real and com-

pleted sale of the property to Palmer. We can see no cause to question the correctness of such a conclusion.

But the admissibility of the testimony upon which the verdict was founded is contested by the plaintiff. First, the trustee disclosure was objected to. We have no doubt that it was legally admitted. It is insisted that it laid before the jury many matters foreign to the issue. But it must be borne in mind that the point was to show what the disclosure did not contain rather than what it did contain, and therefore the whole of it was to be read in order to render the point available.

The plaintiff objected to the proof of the fact that Isaac W. Eaton held in his possession other certificates belonging to Palmer while he held these. The objection does not appear to have been against the mode of proof, being oral and not documentary, but against the fact itself as not competent to be proved. This evidence was of weight to break the force of the argument that there was no reason why Isaac W. Eaton should retain the possession of the certificates if he had sold them. It went to show the business relations of the parties. How far evidence of facts may be admissible to show the probability or non-probability of a main fact in issue, is one of the most troublesome questions in the law. Generally, collateral facts are not admissible. The evidence must be relevant. The difficulty is to decide what is and what is not relevant evidence. The best authorities clearly sustain the doctrine that " the fact of a person having once or many times in his life done a particular act in a particular way does not prove that he has done the same thing in the same way upon another and different occasion." It is sometimes permissible to show, however, what men generally have done under certain circumstances and conditions, as showing how a particular man might act under the same surroundings ; and how particular sights and sounds have affected animals generally and ordinarily, as indicating what was likely to have occurred to the same kind of animal in a particular case under the same or similar conditions. 55 Maine, 438, and cases *post*. But here, the dealing inquired about was between the same persons at the same time and relating to the same kind of property. The reason of the rule which

excludes irrelevant testimony admits such as this. It would be difficult to find cases containing a precisely similar state of facts with the case at bar, but the point as decided by us is well sustained by the results in cases presenting facts analogous to it. *Trull* v. *True*, 33 Maine, 367. *Lee* v. *Wheeler*, 11 Gray, 236. *Com.* v. *Riggs*, 14 Gray, 376. *Upton* v. *Winchester*, 106 Mass. 330. *Hawks* v. *Charlemont*, 110 Mass. 110. *W. P. H. Co.* v. *Smith*, 120 Mass. 444. *Delano* v. *Goodwin*, 48 N. H. 203, 205. *Darling* v. *Westmoreland*, 52 N. H. 401. *Hollingham* v. *Head*, 4 C. B. (N. S.) 388. *Llewellyn* v. *Winkworth*, 13 M. & W. 598. Whar. Ev., § 1287 ; and notes ; and cases cited.

Objection is made to a portion of the charge. Upon the supposition that the jury should find that there was a sale and delivery to Palmer, Eaton remaining only the custodian of the certificates for Palmer, the judge said : " Such an alteration as appears to have been made would be entirely unauthorized and would convey to the plaintiff no title. I instruct you that Mr. Isaac W. Eaton had no right to change the transfer and it would be entirely void and would pass no title to the plaintiff." This was strictly true. " The alteration " or the " transfer changed by alteration " could not of itself carry any title, because the act was forgery. No title can be obtained through the medium of forgery. Nor was Palmer guilty of negligence by placing a confidential trust in Eaton. *Waterman* v. *Vose*, 43 Maine, 504. *Belknap* v. *Nat. B. of N. Amer.*, 100 Mass. 376.

But the plaintiff insists that the instruction was erroneous in view of the statute, (R. S., c. 46, § 11) that an assignment of stock shall not be good except as between the parties until recorded. The position taken amounts to this: That, even if a title could not have been obtained through the forgery, it could have been in spite of the forgery, the plaintiff being a *bona fide* purchaser for value received. If there had been no alteration or erasure, and the plaintiff had been a *bona fide* purchaser for value and without notice of a previous sale, we are inclined to believe that the plaintiff would have been entitled to hold the shares. In such case, if not to be aided by the forgery, he should not be injured by it. He should be in as good a situation as if

no forgery had been committed. Whether he should have been charged with notice would have been a question for the jury under proper instructions, if notice or the want of it was material. If such a point had been taken at the trial, other instructions would have been necessary besides those that were given. The language of the court was appropriate to the point presented by the court. But after a most careful examination of the case and the arguments, we are satisfied that no such point was taken. The charge of the judge clearly indicated that it was not. The judge states what the " position of the parties " was and the law in relation to it. The brief of the learned counsel for the plaintiff virtually admits as much. It states the position of the parties at the trial the same as stated by the judge. It also states that "the instruction was probably given without having in mind the provision of the statute." If it was not in the mind of the court, the inference is that it was not in the mind of the counsel, for, if it had been, counsel would have communicated it to the court. It is a well settled rule, that points not taken in the trial of a cause are waived. If a presiding judge is in error as to the true positions of the parties, he should be so informed before the jury retires. In most courts, all exceptions must be taken before the jury leave the bar. By our practice, not so stringent as that, it should at least appear that the points argued in this court were raised when the cause was tried. Otherwise, a person might gain an advantage by his own neglect. He might make more by withholding than presenting his points. In *Emery* v. *Vinall*, 26 Maine, 295, 303, Whitman, C. J., said : " Every point intended to be made should be presented to the judge at the trial explicitly. If that be not done, he cannot be expected to give any opinion upon it ; and, if he should not, no exceptions should lie in reference to any such point." In *Harpswell* v. *Phipsburg*, 29 Maine, 313, 315, Wells, J., said : " No request having been made to the judge presiding at the trial to charge the jury in any particular manner, an omission to do so in relation to certain principles, not then brought to his consideration, forms no ground of exception. If, in the judgment of a party, the judge omits to give appropriate instructions, his attention must be called to them, before any

objection can be taken to the alleged omission. It may often happen, upon subsequent examination, after a verdict has been rendered, that a party will be able to discover that instructions more appropriate and fit than those given could have been presented to the jury;" and he states that such discoveries cannot be used to overturn a verdict. In *Gardner* v. *Gooch*, 48 Maine, 487, 494, it was said: "If the facts in this case required the application of any rule of law which had not been given, it was the business of the counsel to ask for the appropriate instruction, and, if refused, exceptions might be sustained." In *Buckland* v. *Charlemont*, 3 Pick. 173, 175, Putnam, J., remarked: "If the point is raised in the argument at the trial, I think it is sufficient. If it is not suggested then, I think it is too late, after the verdict, to suggest it for the first time." The rule has been closely adhered to in subsequent Massachusetts cases. *Reed* v. *Call*, 5 Cush. 14. *Burke* v. *Savage*, 13 Allen, 408.

Of course the rule is not so inflexible that an exception to it might not be admitted in possible cases. It would not be in accordance with justice, however, to relax such a salutary rule here, but the reverse of it. The jury, in our judgment, would have rendered the same verdict had the ruling been as the plaintiff now contends it should have been. It was quite essential for them to find that there had never been an actual sale to the plaintiff in order to arrive at the verdict by them rendered.

*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and LIBBEY, JJ., concurred.